## UNITED STATES COURT OF INTERNATIONAL TRADE

TNG WORLDWIDE, INC., a Michigan corporation,

        Plaintiff,

vs.

UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,

        Defendants.

Case No. 1:26-cv-514

## COMPLAINT

1. Plaintiff TNG Worldwide, Inc. ("Plaintiff") is a U.S.-based importer of merchandise subject to the challenged duties.

2. Beginning in February of this year, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA Duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these tariffs on its imported goods.

3. This Court, the United States District Court for the District of Columbia, and the United States Court of Appeals for the Federal Circuit have held that IEEPA does not authorize these tariffs. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*; *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

4. By this action, Plaintiff asks the Court to hold for it exactly what it and the Federal Circuit already held in *V.O.S. Selections*: that IEEPA duties imposed by Defendants, and the underlying executive orders that directed them, are unlawful.

1

5.      The Supreme Court heard oral argument in *V.O.S. Selections* and a companion case arising out of the U.S. District Court for the District of Columbia[1] on November 5, 2025, and is expected to rule in the near future.

6.      This separate action is necessary, however, because even if IEEPA duties and underlying executive orders are held unlawful by the Supreme Court, importers that have paid IEEPA duties, including Plaintiff, are not guaranteed a refund for those unlawfully collected tariffs in the absence of their own judgment and judicial relief.

7.      And this action is necessary *now* because the entries for which Plaintiff paid tariffs imposed under authority of IEEPA will begin to become liquidated and final as a matter of law by January 9, 2026. Plaintiff seeks relief from the impending final liquidations to ensure that its right to a complete refund is not jeopardized (and is to that end filing a motion for a preliminary injunction to suspend liquidation).

8.      Plaintiff seeks relief from the impending liquidations to ensure that its right to a complete refund is not jeopardized.

9.      Accordingly, for itself, Plaintiff seeks (i) a declaration that IEEPA duties are unlawful; (ii) an injunction preventing Defendants from imposing further duties on it under the executive orders challenged in this lawsuit; and (iii) full refund from Defendants of all IEEPA duties Plaintiff has already paid to the United States as a result of the executive orders challenged in this lawsuit, as well as those it will continue to pay.

## PARTIES

10.     Plaintiff TNG Worldwide, Inc., is a U.S. importer, incorporated and headquartered in Michigan, whose merchandise is subject to the duties challenged in this action.

---

[1] *Learning Res., Inc. v. Trump,* 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment,* No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

11. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for administering and collecting duties on imported goods.

12. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

13. Defendant United States of America received the disputed IEEPA Duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

14. Defendants are referred to collectively in this Complaint as "CBP."

## JURISDICTION AND STANDING

15. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

16. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

17. Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by CBP. As a result of the executive orders challenged by this lawsuit, Plaintiff has paid IEEPA duties to the United States and thus has suffered injury caused by those orders. Declaratory and injunctive relief from this Court would redress those injuries. Plaintiff also faces imminent and irreparable harm because entries for which it paid IEEPA duties are anticipated to liquidate as early as January 9, 2026.

## **GENERAL PLEADINGS**

**I.    The Challenged Tariff Orders Issued Under IEEPA.**

18.    On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each order invoked IEEPA as authority and declared a national emergency to justify the imposition of tariffs.

19.    Executive Order 14194, 90 Fed. Reg. 9,117, titled *Imposing Duties To Address the Situation at Our Southern Border* (the "Mexico Tariff Order"), imposed an additional 25 percent tariff on imports from Mexico based on alleged unlawful entry and illicit drug trafficking and on Mexico's alleged failure to interdict traffickers, criminal organizations, and drugs. *Id.*

20.    Executive Order 14193, 90 Fed. Reg. 9,113, titled *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* (the "Canada Tariff Order"), declared a national emergency based on opioid trafficking and imposed an additional 25 percent tariff on imports from Canada, subject to exceptions.

21.    Executive Order 14195, 90 Fed. Reg. 9,121, titled *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* (the "China Tariff Order"), declared a national emergency based on opioid trafficking and cited synthetic opioid inflows and the conduct of Chinese chemical companies. The order further alleged failure by the Chinese government to interdict precursor suppliers, money laundering, criminal organizations, and drugs. *Id.* It imposed an additional 10 percent *ad valorem* tariff on imports from China.

22.    On February 5, 2025, four days after issuance of the China Tariff Order, the President issued Executive Order 14200, titled *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* (the "February 5 Amendment").

23.    On March 3, 2025, the President further amended the China Tariff Order by issuing Executive Order 14228, 90 Fed. Reg. 11,463, titled *Further Amendment to Duties Addressing the*

*Synthetic Opioid Supply Chain in the People's Republic of China* (the "March 3 Amendment"), increasing additional tariff on Chinese imports 20 percent due to the People's Republic of China's failure to adequately address illicit drug trafficking.

24.     On April 2, 2025, the President issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficit* (the "Reciprocal Tariff Order"), which declared a national emergency based on trade deficits, alleged that foreign economic policies suppressed United States wages and consumption. It imposed a 10 percent tariff on nearly all imports effective April 5, 2025, and additional country-specific tariffs effective April 9, 2025, ranging from 11 percent to 50 percent. *Id.* at Annex I.

25.     On April 8, 2025, following retaliatory tariffs imposed by China, the President issued Executive Order 14259, 90 Fed. Reg. 15,509, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low Value Imports from the People's Republic of China*, which increased tariffs on imports from China from 34 percent to 84 percent.

26.     On April 9, 2025, the President issued Executive Order 14266, 90 Fed. Reg. 15,625, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, suspending higher country-specific reciprocal tariffs for all countries except China for 90 days. It also raised China's reciprocal tariff from 84 to 125 percent, which—combined with an existing 20 percent trafficking-related tariff—resulted in 145 percent tariffs on most Chinese imports.

27.     The executive orders challenged in this lawsuit directed changes to the HTSUS, requiring that goods subject to the challenged tariffs to be entered under new tariff codes.

5

28.     On April 14, 2025, several companies filed an action in this Court challenging the tariff orders. *See V.O.S. Selections*, No. 25-cv-00066 (Dkt. 2). This Court held the orders unlawful. The Federal Circuit affirmed sitting *en banc*.

29.     After the filing of the *V.O.S. Selections* complaint, President Trump issued additional executive orders invoking IEEPA to impose and modify tariffs. This Complaint challenges only those tariff orders the Federal Circuit already held to be unlawful, referred to herein as the "Challenged Tariff Orders."

**II.     CBP's Implementation and Collection of the Challenged Duties**

30.     CBP is charged with the assessment and collection of duties, including IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502. 32.

31.     In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

32.     CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11. ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

33.     The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also*

*Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

34. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

### III. Liquidation of Entries and Irreparable Harm to Plaintiff.

35. "Liquidation" is defined as the final computation or determination of duties owed on an entry for consumption or drawback. 19 C.F.R. § 159.1.

36. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

37. CBP determines the final appraisement by confirming the value, classification, duty rate, and total duties owed. 19 U.S.C. § 1500.

38. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

39. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, liquidation is done automatically by operation of law. CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website.

40. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

41. This Court possesses the equitable authority to suspend liquidation. E.g., *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

42. Once liquidation has occurred, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking the CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.[2] But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

43. This Court and the Federal Circuit have cautioned that an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

**IV.     IEEPA Does Not Authorize the Imposition of Tariffs.**

44. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

45. None of these statutes authorizes the President to impose tariffs. Of these, it is IEEPA alone that the President and CBP are leaning on to impose and collect IEEPA duties. IEEPA does not authorize what the Challenged Tariff Orders seek to impose.

---

[2] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

8

46. IEEPA grants the President certain powers, but they "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

47. Those powers include the ability to "investigate, regulate, or prohibit" certain transactions in foreign exchange, payments through banks involving foreign countries or nationals, or imports of "currency or securities." 50 U.S.C. § 1702 (a)(1)(A).

48. The President may also control, block, or prohibit the movement or importation of funds or property in which "any foreign country" or foreign national has "interest" in, and which is also subject to the U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(B).

49. Finally, and only when the U.S. is engaged in "armed hostilities" or has been attacked by a foreign country, the President may "confiscate" property of such a foreign person or country that also is subject to U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(C).

50. The text of IEEPA does not use the word "tariff" or any term of equivalent meaning.

51. IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize, or used by any other President to impose, tariffs.

**V.    The Constitution Assigns Tariff Authority Exclusively to Congress.**

52. The Constitution vests all legislative powers in Congress. U.S. Const. art. I, § 1.

53. The Constitution further provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises," U.S. CONST. art. I, § 8, cl. 1 (the "Taxing Clause"), and to "regulate Commerce with foreign Nations." *Id.* cl. 3 (the "Commerce Clause").

54. Tariffs have long been understood to fall within the scope of Congress's authority under the Taxing Clause and the Commerce Clause.

9

55. To the extent the Constitution permits Congress to delegate any portion of its vested powers to the President, Congress must, at a minimum, supply an intelligible principle that directs and constrains the exercise of that authority. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482, 222 L. Ed. 2d 800 (2025). Congress provided no such intelligible principle in IEEPA. The absence of any such limiting principle is further demonstrated by the manner in which IEEPA duties have been announced, modified, suspended, and reinstated over short periods, resulting in substantial uncertainty for importers and the marketplace.

56. Interpreting IEEPA to authorize tariffs would therefore be self-defeating, because such a reading would also require invalidating IEEPA as unconstitutional under the nondelegation doctrine for failure to provide any intelligible principle.

57. Moreover, "[c]ourts expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *See West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)). Where Congress has not spoken clearly, courts are instructed to conclude that matters of such "vast economic and political significance" are beyond presidential authority. *See Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023).

58. By any objective standard, the Challenged Tariff Orders involve matters of "vast economic and political significance." Because IEEPA does not clearly authorize the President to impose tariffs, and indeed does not use the terms "tariff" or "duty" and is not codified within Title 19 of the United States Code governing trade, the Challenged Tariff Orders are invalid, and Defendants lack authority to implement or collect them.

**VI.      Federal Courts Have Held That IEEPA Tariffs Are Unlawful.**

59. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing IEEPA duties challenged in that action. The government appealed to the United States Court of Appeals for the Federal Circuit.

60. The Federal Circuit stayed this Court's judgment and injunction and ordered expedited briefing and argument.

61. Sitting *en banc*, the Federal Circuit issued a decision on August 29, 2025, affirming this Court's ruling that IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

62. In a separate action brought by different importers, the United States District Court for the District of Columbia likewise held that IEEPA does not authorize the imposition of tariffs. *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), cert. granted before judgment, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

63. The government appealed that decision to the United States Court of Appeals for the District of Columbia Circuit, but before argument occurred, the United States Supreme Court granted *certiorari* in both *V.O.S. Selections* and *Learning Res.* The Supreme Court consolidated the cases and heard oral argument on November 5, 2025.

**VII.     Plaintiff's Payment of IEEPA Duties and Imminent Liquidation.**

64. Plaintiff imported merchandise into the United States under newly created HTSUS classifications applicable to the Challenged Tariff Orders.

65. Plaintiff's imported merchandise originated in foreign countries and was subject to duties imposed pursuant to the Challenged Tariff Orders.

11

66. As of the filing of this Complaint, Plaintiff paid IEEPA duties imposed pursuant to the Challenged Tariff Orders at the time of entry and has continued to pay such duties.

67. The entries for which Plaintiff paid IEEPA duties are believed to be scheduled for liquidation on or after January 9, 2026.

68. CBP has denied requests by importers seeking extensions of liquidation for entries subject to IEEPA duties.

## STATEMENT OF CLAIMS

### COUNT I: THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER *V.O.S. SELECTIONS*

69. Plaintiff incorporates by reference paragraphs 1 through 68 as if fully set forth herein.

70. In *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), this Court held that the President lacks authority under IEEPA to impose tariffs on imported merchandise.

71. This Court in *V.O.S. Selections* explained that IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions during a declared national emergency. It does not authorize the imposition of tariffs or duties on imported goods, nor does its text or legislative history reflect any delegation of authority to set tariff rates.

72. The United States Court of Appeals for the Federal Circuit affirmed that interpretation, concluding that Congress did not clearly delegate tariff-setting authority to the President under IEEPA and that construing IEEPA to permit such authority would raise serious constitutional concerns, including under the major questions doctrine and the nondelegation doctrine.

73. The Challenged Tariff Orders are materially indistinguishable from the tariff orders invalidated in *V.O.S. Selections*. They purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA. For the same reasons set forth in *V.O.S. Selections* and its affirmance by the Federal Circuit, those Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

74. Plaintiff therefore respectfully requests that this Court follow its own precedent and the binding decision of the Federal Circuit, declare the Challenged Tariff Orders unlawful as applied to Plaintiff, enjoin Defendants from enforcing those orders against Plaintiff and from liquidating entries for which Plaintiff has paid IEEPA duties, and order the refund of all IEEPA duties collected from Plaintiff, together with interest as provided by law.

## COUNT II: IN THE ALTERNATIVE, THE CHALLENGED ORDERS ARE UNCONSTITUTIONAL

75. Plaintiff incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

76. In the alternative, if IEEPA were construed to authorize tariffs, the Challenged Tariff Orders would still be unlawful because such a construction would render IEEPA an unconstitutional delegation of Congress's legislative power to the President.

77. The United States Constitution vests exclusively in Congress the power to "lay and collect … Duties." U.S. CONST. art. I, § 8, cl. 1.

78. Separation-of-powers principles and binding Supreme Court precedent prohibit Congress from delegating legislative authority absent an intelligible principle that meaningfully constrains executive action. IEEPA contains no such principle.

79. Plaintiff therefore respectfully requests that this Court declare that the Challenged Tariff Orders are unconstitutional as applied to Plaintiff, enjoin Defendants from enforcing those orders against Plaintiff and from liquidating entries for which Plaintiff has paid IEEPA duties, and order the refund of all IEEPA duties collected from Plaintiff, together with interest as provided by law.

### COUNT III: DECLARATORY RELIEF (28 U.S.C. § 2201)

80. Plaintiff incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

81. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

82. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

83. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties as a result of the Challenged Tariff Orders on goods it has imported into the United States.

84. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff, and the Plaintiff hereby so requests.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a) Declare that the President lacks authority under IEEPA to set tariffs;

b) Declare that the Challenged Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

c)  Declare that, with respect to Plaintiff, CBP lacks authority to implement or collect any tariffs outlined in the HTSUS that are based on the Challenged Tariff Orders;

d)  Enjoin Defendants, with respect to Plaintiff, from imposing or enforcing any tariffs outlined in the HTSUS that are based on the Challenged Tariff Orders;

e)  Stay and enjoin, on temporary and permanent bases, liquidations of entries for which Plaintiff has paid IEEPA duties;

f)  Order the United States to refund to Plaintiff all duties collected pursuant to the Challenged Tariff Orders, together with interest as provided by law;

g)  Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

h)  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

DYKEMA GOSSETT, PLLC

By: */s/ Timothy J. McCarthy*
Timothy McCarthy (TX. Bar No. 24123750)
*Attorneys for Plaintiff*
1717 Main Street, Suite 4200
Dallas, TX 75201
(214) 698-7857
tmccarthy@dykema.com

Dated: January 9, 2026

063077.000492  4901-5984-4227.5